# RECEIVED

### SEP 2 8 2006

ROBERT H. SHEMWELL, CLERK
WESTERN DISTRICT OF LOUISIANA
LAFAYETTE, LOUISIANA



UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

LAFAYETTE DIVISION

| | |
|---|---|
| ROY RASPANTI | CIVIL ACTION NO.:6:05CV 2135 |
| VERSUS | JUDGE REBECCA F. DOHERTY |
| THOMAS S. KEATY, II | MAGISTRATE JUDGE METHVIN |

## MEMORANDUM RULING

Pending before the Court is an appeal on behalf of Roy Raspanti, taken under 28 U.S.C. §158 (a)(b) from the minute entry order entered by the bankruptcy court on November 15, 2005 denying Raspanti's Motion to Dismiss Chapter 13 Proceeding or Convert to Chapter 7; and the order entered on December 21, 2005 by the bankruptcy court confirming the Chapter 13 plan of Thomas S. Keaty, and denying Raspanti's objection to the Chapter 13 Plan in the matter entitled *In Re Thomas S. Keaty, II,* case No. 05-51007, Chapter 13. The orders were issued by the Honorable Gerald H. Schiff of the United States Bankruptcy Court for the Western District of Louisiana.

Raspanti, an unsecured creditor of Keaty, has filed this Notice of Appeal identifying the issues he desires to present to this Court for review and consideration:

1. Whether Thomas S. Keaty was in bad faith in filing his Chapter 13 proceeding.

2. Whether the Bankruptcy Court erred in denying creditor Roy Raspanti's Motion to Dismiss Chapter 13 Proceeding or Convert to Chapter 7 and Objection to Chapter 13 Plan on November 15, 2005.

3. Whether the bankruptcy court erred in denying creditor Roy Raspanti's Motion to Dismiss Chapter 13 Proceeding or Convert to Chapter 7 filed in the above captioned matter on December 21, 2005.

4. Whether the bankruptcy court erred in confirming the Chapter 13 Plan of Thomas S. Keaty, II.

5. Whether the bankruptcy court erred in failing to dismiss the Chapter 13 Plan of Thomas S. Keaty.

## BACKGROUND

This bankruptcy appeal is the culmination of a protracted and acrimonious series of litigations that began in the Louisiana State Courts. Thomas S. Keaty, in addition to his brother Robert B. Keaty, was found to be liable to Mr. Raspanti for sanctionable conduct arising out of a client fee dispute in the matter entitled *Keaty v. Raspanti*, 781 So. 2d 607 (La. App. 4 Cir. 2001). On January 12, 2005, the United States Court of Appeals for the Fifth Circuit rendered judgment in favor of Roy Raspanti and against Robert B. Keaty finding that Robert B. Keaty's debt to Roy Raspanti was due to willful and malicious conduct, and therefore, not dischargeable under Chapter 7, *In Re Robert B. Keaty*, 397 F3d 264 U.S. Ct. App. 5 Cir. 2005.

The decision *In Re Robert B. Keaty* was part of a bankruptcy proceeding filed on December 9, 1999 by Robert B. Keaty that was unconnected to Thomas Keaty's various bankruptcy filings. Thomas Keaty, in a separate bankruptcy proceeding, was discharged from Chapter 7 in November, 2004, except for the debt he, also, owed to Mr. Raspanti which remained unpaid. However, as to Thomas Keaty's Chapter 7 bankruptcy, unlike Robert Keaty's, no official determination as to the dischargeability of the debt owed to Mr. Raspanti had been entered. Therefore, on January 20, 2005 Raspanti filed a Motion for Summary Judgment in bankruptcy court the adversary proceeding number 04-5077, entitled *Roy Raspanti v. Thomas S. Keaty, II* asking the court for summary judgment against Thomas S. Keaty, holding that Thomas Keaty's debt to Raspanti was also due to

willful and malicious conduct and therefore, not dischargeable by Thomas Keaty under Chapter 7 and thus, owed to Raspanti.[1] The trial court initially set the Motion for Summary Judgment for hearing on March 1, 2005; multiple continuances ensued as a result of requests by Thomas Keaty's counsel, delaying the hearing for some six weeks. Mr. Raspanti argues that Thomas Keaty's actions taken in response to the summary judgment motion setting continued a pattern and series of misrepresentations and intentionally obstructionist tactics by Thomas Keaty and his attorneys designed to avoid payment of the debt Mr. Raspanti argues is owed by Thomas Keaty. Mr. Raspanti argues the clear motivation behind Thomas Keaty and his counsels' tactics was to delay and thus, prevent, a summary judgment hearing from going forth regarding Mr. Raspanti's debt while Thomas Keaty's bankruptcy proceeding was situated under Chapter 7. Raspanti argues the debt owed to Raspanti was not dischargeable pursuant to Chapter 7, given the prior Fifth Circuit ruling as to Robert Keaty holding the actions of Robert Keaty as to Raspanti to have been due to willful and malicious conduct. Raspanti argues that Robert Keaty's and Thomas Keaty's actions had been found to have been identical, thus, the finding of the Court as to Robert Keaty should govern the matter as to Thomas Keaty.[2] Raspanti further argues delay of his motion was crucial to Thomas Keaty, as Thomas Keaty intended to transform his Chapter 7 filing – where the debt potentially was not dischargeable – to one pursuant to Chapter 13 – where the debt was potentially dischargeable – as soon as the law would allow. Thus, Raspanti argues Thomas Keaty and his attorneys set out to delay hearing on his motion filed under the Chapter 7 filing for some six weeks, until Thomas Keaty could

---

[1] Raspanti argues Thomas S. Keaty's conduct was identical to that of his brother. *Keaty v. Raspanti* 695 S.2d 1085 (La. App. 4 Cir. 1997); *Keaty v. Raspanti* 781 S. 2d 607 (La. App. 4 Cir. 2001) and *Keaty v. Raspanti* 866 S.2d 1045 (La. App. 4 Cir. 2004).

[2] See footnote one, *supra*.

legally file for protection under Chapter 13. Raspanti avers Thomas Keaty and his attorneys behaved unethically in repeatedly delaying the summary judgment hearing and manipulating the proceedings for essentially six (6) weeks until April 15, 2005, which, he argues, was the earliest date Thomas Keaty could file his Chapter 13 proceeding. As noted, Chapter 13 bankruptcy would potentially allow discharge of the debt Raspanti argues was caused by willful and malicious conduct, where Chapter 7 potentially, would not. Mr. Raspanti argues that had the original summary judgment hearing taken place on March 1, 2005, and had he been successful in obtaining a judgment against Thomas Keaty, he would have had approximately six (6) weeks to enforce a judgment against Thomas Keaty before Keaty could have stayed enforcement with a Chapter 13 filing.

As a result of these alleged delay tactics, Raspanti argues, Thomas Keaty and his attorneys were able to avoid the summary judgment hearing in the Chapter 7 proceeding and, thus, his obtaining a judgment against Thomas Keaty, and thus his window of opportunity to enforce that judgment before Thomas Keaty filed a Chapter 13 proceeding in the bankruptcy court.[3]

Raspanti, also, argues Thomas Keaty's Chapter 13 petition itself, along with the Chapter 13 plan, were filed in bad faith and contained multiple, substantive misrepresentations. Raspanti asserts Thomas Keaty and his attorneys repeatedly and intentionally misled the court, refused to provide or provided suspect information requested by the trustee and the court, including information on his assets, income, residence, which Raspanti argues, resulted in erroneous rulings by the Court as to other motions filed by Raspanti challenging the Chapter 13 filing and plan.

Thomas Keaty argues he and his counsel at all times acted ethically and in good faith.

---

[3] Appellant did not address, nor did the record reflect, whether a Judgment, had it been obtained at the first setting of the hearing on the Motion for Summary Judgment, might have been made executory under applicable law, before the April 15, 2005 date.

## APPLICABLE LAW

Roy Raspanti argues Thomas Keaty's many misrepresentations and manipulations of the Court and the bankruptcy process preclude Thomas Keaty from being found as having acted in good faith in his multiple actions before the Bankruptcy Court and, therefore, the Bankruptcy Court erred in finding Thomas Keaty in good faith, and, thus, erred in denying Mr. Raspanti's motions noted *supra*. Raspanti argues that appellee's Chapter 13 *petition* was filed in bad faith *along with the plan* filed pursuant to Chapter 13.[4]  Raspanti argues the Chapter 13 petition was filed for only one reason: to intentionally circumvent the specific exception in Chapter 7 which prohibits the discharge of a debt due to willful and malicious conduct. Raspanti further argues the Plan approved by the court pursuant to Chapter 13 is tainted as Thomas Keaty and his attorneys intentionally misled the trustee and court and failed to properly provide necessary information as to his assets and financial situation, thus at all times acting in bad faith and thereby rendering the Chapter 13 plan improper.

Thomas Keaty argues at all times he and his lawyers acted in good faith and pursuant to applicable law.

Prior to the more recent amendments, Congress had expanded the normal discharge provisions, allowing a Chapter 13 debtor to discharge debts that would otherwise have been non-dischargeable under § 523 of the Bankruptcy Code. *See* 11 U.S.C. § 1328(a).  The 5th Circuit has held that "invoking Chapter 13 to obtain a discharge of a debt previously held non-dischargeable in Chapter 7 cannot, as a matter of law, suffice to show bad faith...the good faith inquiry under 1325(a)(3) requires a careful examination of the totality of the circumstances surrounding the

---

[4]  As this case was filed prior to the recent amendments to the bankruptcy code, an inquiry of good faith focuses on whether the plan, as opposed to the petition *and* the plan, is filed in good faith. *See* §1325 (a)(3).

Chapter 13 filing." *In re Chaffin*, 836 F.2d 215 (5th Circuit 1988). The *Chaffin* court added that it is the *fact finding* of the bankruptcy court that enables the reviewing court to "tell whether the [debtor] and his counsel are playing games or filing a bona fide plan that must be confirmed if it meets all six requirements of 11 U.S.C § 1325." *Id* at 217 (emphasis added).

While the *Chaffin* court held that invoking Chapter 13 to discharge a debt that would not be dischargeable under Chapter 7 does not, per se, constitute bad faith, a bankruptcy court should be cognizant that "other circumstances might exist that would warrant a finding of bad faith."*Id* at 217.

These "other factors", as directed by the Fifth Circuit in *Chaffin* include: whether payments under the plan fairly reflect the debtor's ability to pay, considering both current and future income and in particular, whether these payments committed all of the debtor's disposable income; whether the debtor never intended to pay the debt; and whether there are continuing objections to the confirmation of the plan.

Section 1325 of the Bankruptcy Code lists the requirements of confirmation in a Chapter 13 case:

> (a) The court shall confirm the plan if-
>> (1) the plan complies with the provisions of this chapter and with other applicable
>> provisions of this title;
>> (2) any fee, charge, or amount required under chapter 123 of title 28, or by the plan, to be paid before confirmation, has been paid;
>> (3) the plan has been proposed in good faith and not by any means forbidden by law;
>> (4) the value, as of the effective date of the plan, of property to be distributed under the plan on account of each allowed unsecured claim is not less than the amount that would be paid on such claim if the estate of the debtor were liquidated under chapter 7 of this title on such date;
>> (5) with respect to each allowed secured plan provided for by the plan-
>>> (A) the holder of such claim has accepted the plan;
>>> (B)(I) the plan provides that the holder of such claim retain the lien

securing such claim; and

    (ii) the value, as of the effective date of the plan, of property to be distributed under the plan on account of such claim is not less than the allowed amount of such claim; or

    (C) the debtor surrenders the property securing such claim to such holder; and

(6) the debtor will be able to make all payments under the plan and to comply with the plan.

## I. Standard of Review

The Fifth Circuit has held a district court, when acting as an appellate court in bankruptcy matters, must review the bankruptcy court's factual findings under the clearly erroneous standard and its conclusions of law de novo. *Heartland Federal Savings and Loan Association v. Brisco Enterprises, Ltd.*, 994 F.2d 1160 (5th Cir. 1993). The court must be "left with the definite and firm conviction that a mistake has been made before it will disturb the bankruptcy court's factual findings... **As long as there are two permissible views of the evidence, the Fifth Circuit will not find that the fact finder's choice between competing views was clearly erroneous.**" *In Re Acosta*, 406 F.3d 367 (5th Circuit 2005)(emphasis added). This standard "plainly **does not entitle a reviewing court to reverse the finding of the trier of fact simply because it is convinced that it would have decided the case differently... If the [bankruptcy] court's account of the evidence is plausible in light of the record viewed in its entirety, the [district court] may not reverse it even though convinced that had it been sitting as the trier of fact, it would have weighed the evidence differently.**"[5] *In the Matter of Webb*, 954 F.2d 1102 (5th Circuit 1992)(emphasis added).

A determination of good or bad faith in a Chapter 13 bankruptcy case requires an inherent

---

[5] The sheer number of questionable actions which permeated this process, as well as the underlying theme of avoidance and strategic manipulation argued, is not lost on this Court, and, were this Court the trier of fact, or reviewing this matter under a *de novo* standard, the result may well have been different.

fact finding function on the part of the Bankruptcy Court. Thus, the Bankruptcy Court's factual findings as to the six requirements for confirmation of a plan under § 1325 should not be disturbed in the absence of clear error. *Public Finance Corp. v. Freeman*, 712 F. 2d 219(5th Cir 1983). Additionally, a "good faith inquiry under § 1325(a)(3) requires a careful examination of the totality of the circumstances surrounding the debtor's Chapter 13 filing." *In Re Chaffin*, 836 F. 2d 215 (5th Cir. 1988). An examination of good faith necessarily involves fact finding, consideration of the weight and credibility of testimony and evidence presented, and an evaluation of the totality of the circumstances and the proceeding; thus, the Fifth Circuit has determined the bankruptcy court is best-situated to make the appropriate factual determinations:

> The bankruptcy judge was in a position to determine whether the...[debtors] were making a reasonable proposal consistent with the realities of the distressful economic situation in which they found themselves. [The bankruptcy judge] could best assess whether their proposal constituted a reasonable repayment **or was an attempt to abuse the spirit of the Bankruptcy Code.** *Freeman*, 712 F.2d at 221 (emphasis added).

Additionally, the Fifth Circuit has found a bankruptcy court's findings of fact, "may well have been influenced by observation of witnesses on the stand. Such judgments are often inextricably interwoven with the rest of the evidence presented to the trial court. Thus, it is virtually impossible for the district court to emulate the process and consider evidence in exactly the same light as did the bankruptcy court. This is a principle reason that the clearly erroneous standard is prescribed and **the de novo standard of review of findings of fact is prohibited.**" *In the Matter of Webb*, 954 F.2d 1102 (5th Circuit 1992).

## II. Discussion

The record, by way of argument and other evidentiary sources, reflects the bankruptcy court

was aware of and examined the explanations given for and requests made for the continuances of the hearing on the motion for summary judgment and granted those continuances; thus, this Court must assume, the bankruptcy court found those requests to have been made in good faith as will be discussed further below. The record also reflects the bankruptcy court examined the testimonial evidence and documentary evidence along with the §1325 factors, as well as the *Chaffin* analysis as applied to the facts of the case at bar and determined that the requirements of each had been met and good faith existed. The voluminous record evidences multiple hearings, extensive discovery and extensive witness testimony before the bankruptcy court as part of the bankruptcy court's review and fact finding. The record reflects, of particular concern to the bankruptcy court, in its examination of the §1325 factors and the applicable jurisprudence, in particular, *Chaffin*, was whether the plan was filed in good faith and whether the payments truly reflected all of the debtor's projected disposable income over the course of the plan. The bankruptcy court found in the affirmative.[6] This court cannot find, under the clearly erroneous standard, that the bankruptcy court's findings were clearly erroneous. Again, if this court were the trier of fact or reviewing this matter de novo, this result might not flow.

## THE MOTION FOR SUMMARY JUDGMENT

The bankruptcy court presided over all aspects of the delays and general problems associated with the Motion for Summary Judgment filed by Mr. Raspanti pursuant to Thomas Keaty's Chapter 7 filing. The bankruptcy court was uniquely situated to assess the dynamic as it

---

[6] Appellant raises five separate alleged errors on the part of the bankruptcy court. As those five alleged errors flow out of the Motion for Summary Judgment filed by appellant, the filing of the Chapter 13 petition, the Plan and confirmation of the Plan, this Court will address those five alleged errors within the context of the Motion for Summary Judgement, Chapter 13 filing, Plan and Plan confirmation.

unfolded and to specifically determine whether genuine, legitimate and plausible grounds existed justifying the multiple continuances of the hearing on Raspanti's motion for summary judgement. Specifically, the record indicates that counsel for Thomas Keaty contacted the court and explained, on a point by point basis, what occurred on each of the occasions the Chapter 7 summary judgment proceeding was to be conducted, but was requested by Thomas Keaty to be continued. Among the specific explanations for continuances that the bankruptcy court considered were: a pending matter before the 5th circuit having direct application on the status of Thomas Keaty's debt, and previously scheduled out of town hearings on the part of Keaty's counsel. *See* Plaintiff's Exhibit 4.

The record reflects the bankruptcy court made specific findings of fact in granting the continuances of the hearing, finding sufficient cause for the delay. The record further reflects the bankruptcy court requested and received particularized argument from counsel when evaluating the nature of the requests. The bankruptcy court specifically evaluated the reasons given and in accepting those reasons, this Court must determine it found the reasons plausible. Such factual findings are entitled to significant deference under the law.

The record does not reflect the bankruptcy court was not diligent in monitoring the activities and compliance of all parties throughout the process. While this Court may not have reached the same conclusions as the bankruptcy court on this issue, this Court may not substitute its judgment for that Court. Plausible explanations were given by Thomas Keaty and his counsel as to their actions which resulted in the six week delay in the hearing on Raspanti's motion. Although Mr. Raspanti makes a compelling argument to the contrary, the Fifth Circuit is clear, "As long as there are two permissible views of evidence . . . [the court] will not find that the fact finder's choice between competing views was clearly erroneous." In *Re Acosta, supra*. Thus, this Court declines

to find the bankruptcy court's finding as to this argument of appellant clearly erroneous.

## FILING OF CHAPTER 13

Appellant argues that the conversion from Chapter 7 to Chapter 13 was in bad faith and was done with the specific intention to avoid the express prohibition in Chapter 7 of discharging debts resulting from willful or malicious conduct. However, as noted above, under the bankruptcy law applicable at the time of Thomas Keaty's filing the Chapter 13 plan, the good faith inquiry focused on the ultimate plan as proposed, *not* on the good or bad faith in filing the case *and* the plan. (emphasis added). As noted above, invoking Chapter 13 to discharge a debt that would not be dischargeable under Chapter 7 is not per se bad faith. *Chaffin*, supra. However, as *Chaffin* instructs, other factors may exist that warrant a finding of bad faith. Thus, as the inquiry must focus on a factual inquiry of the facts surrounding the filing, this discussion will be subsumed into the good faith discussions regarding the Chapter 7 Motion for Summary Judgment, *supra*, and the Chapter 13 plan and the Confirmation of the Chapter 13 Plan, *infra*.

## THE PLAN AND CONFIRMATION OF THE PLAN

Under the bankruptcy court's guidance the Chapter 13 plan was confirmed, with modifications made to meet the instructions of the court. The following highlights of the plan list the payments that will be made by appellee to the Trustee and the anticipated dividends to creditors:

(1)     From Appellee's future earnings, the Chapter 13 Trustee would be paid a total of $47,500 over 47 months.

(2)     Administrative claims would be paid in full, and the IRS and LDR would be paid in full on their priority tax claims(i.e. priority unsecured claims)

(3)     The IRS and LDR secured claims, as reduced, will be paid in full, together with 6% and 5% interest, respectively.

(4)    All non-priority unsecured claims will be paid at 4% of the total unsecured claims through the monthly payments made by appellee to Trustee.

(5)    All tax refunds for the years 2005-2007 will be surrendered by appellee to pay non-priority unsecured creditors.

(6)    Appellee will pay, based on enhanced income he may receive from his legal practice, lump payments on a quarterly basis equal to 37.50% of his law firm's gross receipts in excess of $39, 500.00.

The record reflects the bankruptcy court specifically addressed the proposed plan under each requirement of section 1325 and found that appellee had complied with the statute. *See* BR Doc. 53. The record also indicates the bankruptcy court considered the "other factors" as enumerated in *Chaffin,* supra. First, the bankruptcy court, after examining the plan offered by appellee, determined the formula created by the trustee and appellee for payment of funds through appellee's business satisfied the disposable income requirement articulated in *Chaffin. See* BR Doc. 53. Second, the bankruptcy court personally evaluated, in accordance with *Chaffin,* the appellee on the witness stand and apparently accepted, based upon its own credibility assessment and the ultimate plan submitted, appellee's representations that he intended and desired to pay the entire debt he owed to appellant. *See* BR Doc. 53. Third, the bankruptcy court noted on the record the continuing objection, as dictated by *Chaffin,* by appellant that remained and addressed it in turn later in his findings. *See* BR Doc. 53. Specifically, the court addressed the delays in providing information on the ownership and earnings of appellee's business and their dilatory effect on the progression of the litigation, but significantly found no ill-regard for appellant from appellee. *See* BR Doc. 53. Additionally, the bankruptcy court found appellee's ultimate efforts to provide the requested information to have been a good faith effort at providing all information as to the corporation's activities submitted in a re-viewable fashion, and that the plan had been filed in good faith. *See* BR

Doc. 53. The trustee ultimately deemed Thomas Keaty's Chapter 13 filing a "fair plan." *See* BR

Doc. 53    The bankruptcy court addressed the issue of Keaty's alleged deception and delay in

providing requested information and determined these issues were more related to Keaty's inability

to realize exactly what information was requested, where the information was located, and how it

was to be produced. *See* BR Doc. 53. The record reflects these factual findings were made by the

Bankruptcy Court after careful collection and consideration of all information elicited from Thomas

Keaty personally on the witness stand, full review of other discovery information provided, as well

as review of all financial information submitted by Keaty, the trustee, as well as a certified public

accountant. As the bankruptcy court was engaged in intensive fact finding when making its

findings as to the Plan, its findings are entitled to the level of deference noted above.

The court, also, heard and evaluated Mr. Raspanti's objections and arguments and judged

them against the facts as the court had found them. After full review of Mr. Raspanti's objections

and argument, the plan, analysis guided by *Chaffin* and the §1325 factors, hearing witness

testimony, the bankruptcy court accepted a plan which, among other elements, included a 47 month

payment plan that would strain appellee's ability to pay in light of his anticipated earnings, while

acknowledging the possibility that, in the absence of surplus funds, unsecured creditors might not

be paid. The court however, also, included in its totality of the circumstances analysis, the history

and reputation in the community of appellee's law corporation as an indicator that significant

distributions, also, might be made to unsecured creditors in the future should earning surpass

expected limits, but, also, acknowledged that in the event no surplus funds were generated,

unsecured creditors would not be paid.

After full analysis and review the bankruptcy court accepted the Chapter 13 plan:

> I believe that now, with the employment of the certified public accountant
> that the numbers and the documents and the information provided
> the trustee, in part with the exhibits shown today, reflects good faith
> effort at getting all of the numbers on the table and providing the trustee
> with virtually all the information requested regarding the activity of the
> corporation....I believe the efforts that have been made by the trustee
> and the formula that has come up, that has been proposed by debtor,
> is reasonable....On balance I do not believe that the totality of the
> circumstances suggest that this...plan was filed in bad faith....*See* BR Doc. 53

This Court cannot find, under the clearly erroneous stand, that the bankruptcy court's findings were clearly erroneous. Again, if this Court were the trier of fact or reviewing this matter *de novo*, this result might not flow, however again, the Court cannot substitute its judgment for that of the trial court when plausible examination has been given; thus, appellant's argument must fail.

## CONCLUSION

For the foregoing reasons, appellant's Notice of Appeal [Doc. 1] is **HEREBY DENIED**.

THUS DONE AND SIGNED in Lafayette, Louisiana, this _24_ day of September, 2006.

REBECCA F. DOHERTY
UNITED STATES DISTRICT JUDGE

-14-